shall deem the respective parcels of land benefited by the improvement described in chapter 568 of the Laws of 1902. In making such assessment the assessors will consider the character and condition of the properties affected, their improvements, their value, their adaptability for use in connection with the improvement, the probability, present or remote, of deep-channel water way to each parcel benefited, and such other items that must be considered to make an assessment upon all parcels according to benefits. The common council never having directed the board of assessors to levy a local assessment to reimburse the general fund of the city for one-half of the moneys necessary to pay the bonds issued and actually used in good faith for the purpose defined in chapter 568 of Laws of 1902, it is its duty so to do at once, and thus initiate a proceeding for the purpose of paying such bonds that will be free from the irregularities, etc., herein pointed out. The assessment rolls must be returned to the common council, to annul the same and direct a new local assessment as above specified.

Findings may be prepared accordingly, awarding costs to the relators in each proceeding.

(122 App. Div. 497.)

## WALLACE v. JONES et al.

(Supreme Court, Appellate Division, Second Department.   November 22, 1907.)

1. COUNTIES—SUPERVISORS—AUDIT OF CLAIMS—PERSONAL LIABILITY.

A board of supervisors, in auditing claims against a county, exercise a judicial function, and, if they act within their jurisdiction, they may not, in the absence of fraud and collusion, be held personally liable for their audits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Counties, § 83.]

2. WORDS AND PHRASES—"COLLUSION."

"Collusion" implies a concerted or agreed purpose to commit a fraud or accomplish a wrong.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1260, 1261; vol. 8, p. 7606.]

3. COUNTIES—OFFICERS—PAYMENT OF ILLEGAL DEMANDS—STATUTE CONSTRUED.

Under Taxpayers' Act, Laws 1881, p. 709, c. 531, as amended by Laws 1887, p. 885, c. 673, and Laws 1892, p. 620, c. 301, where county officers by collusion allow or pay or connive at the audit of any fraudulent or illegal demand, the colluding official may be held personally liable. Held, in an action against supervisors for an illegal and collusive audit of their bills, that it is not enough that the claim is illegal, but the auditing must have been fraudulently concerted, or done by collusion, before they may be held personally liable.

4. SAME—SUPERVISORS—MILEAGE.

Under County Law, Laws 1892, p. 1750, c. 686, § 23, providing that each supervisor shall receive $4 per day for attending sessions of the board, and mileage for once going and returning between his residence and the place of meeting for each regular and special session, and section 10 (page 1745), providing that the board shall meet annually, may hold special meetings, and may adjourn from time to time, the terms "annual meeting" and "regular session" are synonymous, and a "regular" or "special" session is measured by its actual duration; each day not being a session, within section 23, so as to entitle the supervisors to mileage for each day's actual attendance at sessions of their boards.

5. SAME—RECORDS—PURPOSE—EVIDENCE.
    County Law, Laws 1892, p. 1756, c. 686, § 50, requiring clerks to record
proceedings of boards of supervisors, contemplates that the boards shall
keep books of record of their proceedings, for public information and as
a source of authentic evidence.

6. SAME—SUPERVISORS—COMPENSATION.
    Under County Law, Laws 1892, p. 1750, c. 686, § 23, authorizing com-
pensation to supervisors while engaged in any investigation or other duty
lawfully committed to them by the board when the board is not in ses-
sion, members may not be allowed for services pursuant to a general un-
derstanding that each shall look after the business in his own town and
report from time to time to the board.

7. SAME—RATIFICATION.
    The illegal action of a board of supervisors in allowing compensation
to a member for unauthorized services cannot be sustained on the theory
that what the board could authorize it could ratify after the service was
rendered, and that the audit of a bill for services actually rendered and
expenses actually paid is equivalent to original authority.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Counties, § 61.]

8. SAME—PERSONAL LIABILITY OF SUPERVISORS—ACTIONS—SEVERAL RECOVERY.
    In an action against members of a board of supervisors for collusion in
conjointly auditing their illegal claims for compensation, judgment can-
not be had against them severally for moneys illegally received by each.

Appeal from Special Term, Nassau County.

Action by George Wallace against William H. Jones and others.
Complaint dismissed, and plaintiff appeals. Affirmed.

The following is the opinion of Garretson, J., in the court below:

The plaintiff, a taxpayer of the county of Nassau, has brought this action
against the three defendants who composed the board of supervisors of that
county to recover from them the amount of certain items in the several bills
of said defendants for services and disbursements as supervisors which it is
alleged were collusively audited by the said board. The action is instituted
and is sought to be maintained under section 1 of the "Taxpayers Act," so
called, being chapter 531, p. 709, of the Laws of 1881, as amended by chapter
673, p. 885, of the Laws of 1887 and chapter 301, p. 620, of the Laws of 1892,
which provides that all officers of any county may be prosecuted and an ac-
tion maintained against them by a taxpayer to prevent any illegal official act
or to prevent waste and injury to, or to restore or make good, any property,
funds, or estate of such county, and in case the injury complained of con-
sists in any board, officer, or agent, by collusion or otherwise, allowing or
paying or conniving at the audit of any fraudulent or illegal demand, the
court shall enforce the restitution and recovery thereof, if theretofore paid,
and "also may in its discretion adjudge and declare the colluding or default-
ing official personally responsible therefor, and out of his property * * *
provide for the collection or repayment thereof." The complaint sets forth
three causes of action—one for an illegal audit of the bills of each of the
defendants, and, upon the theory that the defendants as such board acted col-
lusively in auditing each and all of the bills, judgment is asked for against
all of the defendants for the aggregate amount thereof. Such is the nature of
the cause of action, and the Court of Appeals, in passing upon the sufficiency
of the complaint, apparently deals with it in that way, and in no other. In re
Daly, 189 N. Y. 37, 81 N. E. 560. The form of the action and the judgment
to be recovered therein would be the same if an audit had been alleged to
have been collusively made of any illegal claim against the county other than
one presented by a member of the auditing board.

It is well settled that a board of supervisors, in auditing claims against a
county, exercise a judicial function, and if they act within their jurisdiction
they cannot, in the absence of fraud and collusion, be held personally re-
sponsible for their audits. People ex rel. Oneida Bank v. Supervisors, 51 N.
Y. 442; People ex rel. Baldwin v. Supervisors, 26 Barb. 118; People v. Stock-

ing, 50 Barb. 573. The "Taxpayers Act" but recognizes this principle and extends its application and operation. So that a recovery in this action must among other things, be based upon a finding of fact that the defendants, in making the audits complained of, acted collusively. The words of the act are: "By collusion * * * allowing or paying or conniving at the audit of any fraudulent or illegal demand." The Court of Appeals has declared that the word "collusion" means "fraudulently concerted," as defined by lexicographers. Another definition is: "An agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law." Bouvier, Law Dict. There is, therefore, involved in and necessarily implied by the term "collusion" a concerted or agreed purpose to commit a fraud or accomplish a wrong. It is not enough that the claim is illegal, but the auditing of it must also have been "fraudulently concerted," or done by collusion, in order that the court "may in its discretion adjudge and declare the colluding officials personally responsible therefor." Having regard to all of the evidence and the admitted facts in this case, I am unable to find that the defendants, in auditing their several claims, did so collusively, or that their audits were fraudulently concerted. That they were ignorant of the law, and acted upon the faith of misleading and erroneous precedents, and were not well advised, and were perhaps negligent, is a more accurate interpretation of their conduct.

As to the illegality of the several claims of the defendants, so much thereof as relates to mileage for attendance at regular meetings of the board in excess of once going and returning, and to per diem services and expenses for "committee work," are not sustainable in law. The county law (Laws 1892, p. 1750, c. 686) provides (section 23) that "each supervisor shall receive from the county compensation at the rate of four dollars per day for each calendar day's actual attendance at the sessions of their respective boards, and mileage, at the rate of eight cents per mile for once going and returning from his residence to the place where the sessions of the board shall be held, by the most usual route, for each regular and special session." By section 10 of the same act it is provided that the board of supervisors "shall meet annually at such time and place as they may fix and may hold special meetings," and "may adjourn from time to time." I think the words "annual meeting" and "regular session" synonymous, and that a "regular" or a "special" session is to be measured by its actual duration, and that each day of its duration is not a session, within the meaning of the law. So that the defendants were in error in assuming that they were entitled to mileage for each calendar day's actual attendance at the sessions of their board. The county law also provides that "each supervisor * * * may also receive compensation from the county at the rate of four dollars per day while actually engaged in any investigation or other duty which may be lawfully committed to him by the board, except for services rendered when the board is in session, and if such investigation or duty require his attendance at a place away from his residence, and five miles or more distant from the place where the board shall hold its sessions, his actual expenses incurred therein. No other compensation or allowance shall be made to any supervisor for his services, except such as shall be by law a town charge."

Important and valuable services seem to have been rendered by these defendants, respectively, to the people of the county during the period covered by their bills, and a large amount of money has been expended by each in actual expenses incurred therein; but the minutes of the board are barren of evidence that a single matter of investigation or other duty was committed to any of them, "lawfully" or otherwise. It is contemplated by the law that boards of supervisors shall keep books of record of their proceedings. By section 50 of the county law it is made the duty of their clerk to "record in books provided for the purpose all the proceedings of such board." This is for public information and for a source of authentic evidence as well. The record alone can show that a matter of special duty has been "lawfully committed" to a supervisor. It appears in the case by oral testimony that the service of each supervisor in such matters, called by them "committee work," was done in pursuance of a general understanding that each supervisor should look after the roads and other business in his own town and report from time

to time to the board, and such course was undoubtedly and in good faith pursued. But this course was not within the letter or even the spirit of the law, and their charges for such "committee work" were not properly made or allowed. It will be unfortunate for the defendants if this conclusion shall operate to deprive them of compensation for services rendered in good faith to the people of the county; but it is of the highest importance and quite essential for the protection and promotion of the public interests that at least substantial compliance with the forms and requirements of the law shall be had.

I am unable to assent to the proposition of the learned counsel for the defendants, in its application to the facts of this case, that what the board had the power to authorize in the first instance it could ratify after the service was rendered, and that the audit of a bill for services actually rendered and expenses actually paid in matters relating to the county and which were within the general supervision of the joint board was equivalent to original authority. I have dealt with the question as to the legality of the charges in the defendants' bills above referred to, not because their determination is essential to the decision of the case, but that the plaintiff may, if so advised, have the benefit of express findings thereon in the event that the judgment to be entered hereon shall be subjected to review.

The learned counsel for the plaintiff presents the proposition that, if the court shall conclude that the plaintiff is not entitled to recover as against all of the defendants, yet a judgment may be had against them severally for the moneys illegally received by each. Such is not the nature of the action; for, as has been pointed out, the action is based upon the alleged collusion or fraudulent concert of the defendants acting conjointly as auditors, and not to recover from each defendant moneys illegally received by him from the county.

For the foregoing reasons, I am constrained to the conclusion that there must be judgment for the defendants, dismissing the plaintiff's complaint upon the merits, with costs.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Thomas Young, for appellant.
James W. Treadwell, for respondents.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Mr. Justice Garretson at Special Term.

WOODWARD, JENKS, RICH, and MILLER, JJ., concur. HIRSCHBERG, P. J., not voting.

---

(56 Misc. Rep. 186.)

HUNGERFORD v. VILLAGE OF WAVERLY et al.

(Supreme Court, Special Term, Tioga County. October, 1907.)

1. MUNICIPAL CORPORATIONS—PERSONAL INJURIES—PRESENTATION OF CLAIM.

Plaintiff sued a village and its trustees as individuals and also its street commissioners for injuries received by an alleged defective sidewalk. The verified statement of claim was not filed until 30 days after the expiration of the statutory period of six months, required by Laws 1897, p. 366, c. 414. The complaint alleged the physical incapacity of plaintiff to file the claim because of the injuries received, and also set up a conversation with one of defendant's trustees, a member of the committee on sidewalks, in which she requested the trustee to bring the matter before the board with a view to settlement, which he promised to do, that the matter was brought before the trustees and no damages allowed, but no information was given of the decision of the trustees until about the time of the filing